# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> NEWSMAX MEDIA, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No.: N21C-11-028 EMD |

Submitted: August 22, 2024
Decided: September 12, 2024

*Upon Defendant's Motion for Summary Judgment*,
**GRANTED in part and DENIED in part.**

*Upon Plaintiffs' Motion for Summary Judgment*,
**GRANTED in part and DENIED in part.**

Michael J. Barrie, Esquire, Kate Harmon, Esquire, Benesch, Friedlander, Coplan & Aronoff LLP, Wilmington, Delaware; J. Erik Connolly, Esquire, Nicole Wrigley, Esquire, David D. Pope, Esquire, William Walsh, Esquire, Lee B. Muench, Esquire, Lauran Tortorella, Esquire, Olivia Sullivan, Esquire, Meghan Golden, Esquire, Benesch, Friedlander, Coplan & Aronoff LLP, Chicago, Illinois. *Attorneys for Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*.

C. Barr Flinn, Esquire, Kevin A. Guerke, Esquire, Timothy E. Lengkeek, Esquire, Lauren Dunkle Fortunato, Esquire, Michael A. Laukaitis II, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware; Douglas D. Herrmann, Esquire, Troutman Pepper Hamilton Sanders LLP, Wilmington, Delaware; Bennet J. Moskowitz, Esquire, Troutman Pepper Hamilton Sanders LLP, New York, New York; Misha Tseytlin, Esquire, Troutman Pepper Hamilton Sanders LLP, Chicago, Illinois; Howard M. Cooper, Esquire, Joseph M. Cacace, Esquire, Josh L. Launer, Esquire, Maria A. Lombardi, Esquire, Todd & Weld LLP, Boston, Massachusetts. *Attorneys for Defendant Newsmax Media, Inc.*

**DAVIS, J.**

# I.    INTRODUCTION

This is a civil action involving defamation claims. Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") allege Defendant Newsmax Media, Inc. ("Newsmax") published false and defamatory statements about Smartmatic relating to Smartmatic's role in the 2020 United States Presidential Election (the "Election").

Specifically, Smartmatic alleges Newsmax published or republished "false statements and implications during news broadcasts, in online reports, and on social media that Smartmatic participated in a criminal conspiracy to fix, rig, and steal the 2020 U.S. election."[1] Smartmatic maintains Newsmax's statements constitute defamation *per se* because the statements charge Smartmatic with a "serious crime and were of a nature tending to injure Smartmatic in its trade, business, and profession."[2] Smartmatic seeks actual, consequential, special, and punitive damages.[3]

On November 3, 2021, Smartmatic filed its Complaint.[4] In February 2022, Newsmax filed its Answer, affirmative defenses, and a Counterclaim.[5] In June 2022, Newsmax filed a motion for judgment on the pleadings under Civil Rule 12(c).[6] The Court denied Newsmax's motion for judgment on the pleadings on February 3, 2023.[7]

---

[1] Amended Complaint (hereinafter "Am. Compl.") ¶ 432, March 28, 2023 (D.I. 177).
[2] *Id.* ¶ 440.
[3] *Id.* ¶¶ 446-7.
[4] *See* D.I. 1.
[5] *See* D.I. 59. Smartmatic filed its Answer to Newsmax's Counterclaim in February 2022. *See* D.I. 60.
[6] *See* D.I. 69, D.I. 70.
[7] *See Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024 (Del. Super. Feb. 3, 2023).

On March 28, 2023, Smartmatic filed its First Amended Complaint (the "Amended Complaint").[8] Newsmax moved to dismiss the Amended Complaint on April 28, 2023.[9] The Court issued a memorandum opinion, denying Newsmax's motion to dismiss on August 23, 2023.[10]

On June 7, 2024, Newsmax filed its Motion for Summary Judgment (the "Newsmax Motion").[11] On July 3, 2024, Smartmatic filed its brief in opposition to the Newsmax Motion.[12] Smartmatic also filed a Motion for Summary Judgment (the "Smartmatic Motion")[13] Newsmax filed its response in opposition to the Smartmatic Motion on July 3, 2024.[14] Both parties submitted their reply briefs in support of their respective motions for summary judgment on July 31, 2024.[15] The Court heard oral arguments on the cross-motions for summary judgment on August 22, 2024, at which time the matter was taken under advisement.[16]

For the reasons stated below, the Court **GRANTS in part and DENIES in part** the Smartmatic Motion and **GRANTS in part and DENIES in part** the Newsmax Motion.

---

[8] *See* Am. Compl.

[9] *See* D.I. 226, D.I. 227.

[10] *See Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 5551026 (Del. Super. Aug. 23, 2023).

[11] *See* Defendant's Opening Brief in Support of Its Rule 56 Motion for Summary Judgment (hereinafter "Newsmax MSJ") June 7, 2024 (D.I. 934).

[12] *See* Smartmatic's Brief in Opposition to Newsmax's Rule 56 Motion for Summary Judgment (hereinafter "Smartmatic Opp") July 3, 2024 (D.I. 1041).

[13] *See* Smartmatic's Opening Brief in Support of Motion for Summary Judgment (hereinafter "Smartmatic MSJ") June 7, 2024 (D.I. 933).

[14] *See* Defendant's Response in Opposition to Plaintiffs' Brief in Support of Their Motion for Summary Judgment on Liability (hereinafter "Newsmax Opp.") July 3, 2024 (D.I. 1043).

[15] *See* Reply Brief in Support of Smartmatic's Motion for Summary Judgment on Liability (hereinafter "Smartmatic Reply") July 31, 2024 (D.I. 1115). *See* Defendant's Reply Brief in Support of its Rule 56 Motion for Summary Judgment on Liability (hereinafter "Newsmax Reply") July 31, 2024 (D.I. 1116).

[16] D.I. 1180.

## II.    RELEVANT FACTS

### A. PARTIES

Plaintiff Smartmatic USA Corp. is an election technology and software company that does business by entering into contracts with government entities all around the world.[17]  Smartmatic USA Corp. is incorporated in Delaware and has its principal place of business in Boca Raton, Florida.[18]  During the Election, Smartmatic USA Corp. only "provided election technology and software" to Los Angeles County.[19]  Smartmatic USA Corp. "played no part in the counting or tabulation of votes" in Los Angeles County.[20]

Plaintiff Smartmatic International Holding B.V. owns 100% of Smartmatic USA Corp.[21] Smartmatic International Holding B.V. is incorporated in the Netherlands and has its principal place of business in Amsterdam, Netherlands.[22]  Smartmatic International Holding B.V. "owns multiple companies operating under the Smartmatic brand in almost two dozen countries."[23]  Smartmatic International Holding B.V. "did not play any role in the [Election] outside of the technology and software provided by Smartmatic USA Corp. for Los Angeles County."[24]

Plaintiff SGO Corporation Limited owns 100% of Smartmatic International Holding B.V.[25]  In other words, SGO Corporation Limited owns 100% of Smartmatic International Holding B.V., which owns 100% of Smartmatic USA Corp.[26]  SGO Corporation Limited is

---

[17] Am. Compl. ¶ 11.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶ 12.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* ¶ 13.
[26] *Id.*

incorporated in the United Kingdom and has its principal place of business in London, United Kingdom.[27] SGO Corporation Limited "did not play any role in the [Election] outside of the technology and software provided by Smartmatic USA Corp. for Los Angeles County."[28]

Defendant Newsmax provides media services through: (i) Newsmax news channels on television; (ii) the news website Newsmax.com; (iii) mobile apps for smartphone devices; and (iv) social media accounts, including the @newsmax X (formerly known as Twitter) handle and a YouTube page.[29] Newsmax is incorporated in the State of Delaware and has its principal place of business in West Palm Beach, Florida.[30]

## B. RELEVANT NON-PARTIES

### 1. Newsmax's Executives

Christopher Ruddy, Chief Executive Officer of Newsmax, "served as the chief editorial officer, setting the company's editorial policies and strategies."[31] Mr. Ruddy "exercised final editorial authority" within Newsmax.[32] Elliot Jacobson, Chief Content Officer of Newsmax, was primarily responsible for the "operations of Newsmax's programming initiatives, including managing all staff, managing talent, overseeing Newsmax's production schedules and all of Newsmax's programming initiatives."[33] Gary Kanofsky, Newsmax's News Director, "oversaw daily news coverage strategy, journalist assignments and story selection."[34] Mr. Kanofsky also collated the day's news and facilitated daily morning meetings with Newsmax's hosts and producers.[35]

---

[27] *Id.*
[28] *Id.*
[29] *Id.* ¶ 15.
[30] *Id.*
[31] Smartmatic MSJ at 68.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 69.
[35] *Id.*

### 2. Newsmax's Hosts and Producers

Bob Sellers and Heather Childers are the hosts of *America Agenda*, which is produced by Jerry Burke.[36]  Christopher Salcedo hosts *The Chris Salcedo Show*, produced by Julian Atienza.[37]  Greg Kelly hosts *Greg Kelly Reports*.[38]  Christopher Knowles and Damon Plotnick are producers of *Greg Kelly Reports*.[39]  *John Bachman Now* is hosted by John Bachman and produced by Erin Parker and Chris Tamas.[40]  Shaun Kraisman and Emma Rechenberg host *National Report*, which is produced by Amalia Cella.[41]  Grant Stinchfield is the host of *Stinchfield* and Cynthia Costas is the producer.[42]  Robert Schmitt hosts *Wake Up America*.[43]  Emerald Robinson was a Newsmax White House Correspondent.[44]

### 3. Peter Neffenger

Peter Neffenger is a board member and chair of the board with Smartmatic.[45]  Former-President Obama nominated Mr. Neffenger to the Transportation Security Administration head and the Senate confirmed Mr. Neffenger to that post.[46]  President Biden thereafter appointed Mr. Neffenger to President Biden's transition team, focusing on "general management issues within [DHS] and immigration in particular."[47] Mr. Neffenger maintained that role with President Biden's team from September 2020 to January 2021.[48]

---

[36] Newsmax Opp. at 105.
[37] *Id.* at 107.
[38] *Id.* at 108.
[39] *Id.*
[40] *Id.* at 109.
[41] *Id.* at 111.
[42] *Id.* at 114.
[43] *Id.* at 115.
[44] *Id.* at 116.
[45] Newsmax MSJ. *See* Ex. 1 (hereinafter "Neffenger Dep.").
[46] Neffenger Dep. 26:11–15.
[47] *Id.* at 27:6–11.
[48] *Id.* at 27:12–16.

## C. SMARTMATIC'S INITIAL HISTORY AS AN ELECTION TECHNOLOGY COMPANY

Smartmatic was founded in 2000 in Boca Raton, Florida.[49]  The two founders, Antonio Mugica and Roger Piñate, both originally from Venezuela, serve as Smartmatic's CEO and President, respectively.[50]  Samira Saba serves as Smartmatic's Director of Communications.[51]  Smartmatic began as a secure online set of protocols in the banking industry but shifted its focus to election technology and software following the 2000 United States Presidential Election.[52]  Since 2003, "Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach."[53]

Currently, Smartmatic provides "end-to-end election services to local, state, and national governments."[54]  Smartmatic's products include electronic voting machines, electronic counting machines, ballot marking devices, voter management, poll worker support, online voting, and election management platforms.[55]

In 2004, Venezuela used Smartmatic's technology in the first automated election in Venezuela, where the election was won by Hugo Chavez.[56]  This election caused a public controversy.[57]  Some believed the election was fraudulent because seven months before Smartmatic was awarded the 2004 Venezuelan election contract, a Venezuelan government financing agency invested over $200,000 into a small technology company, owned by some of the same people as Smartmatic.[58]  The Venezuelan government agency received a 28 percent

---

[49] Am. Compl. ¶ 20.
[50] Newsmax MSJ at 5.
[51] Newsmax MSJ. Ex. 4 (hereinafter "Saba Dep.") at 23:11–18.
[52] Am. Compl. ¶¶ 20-1.
[53] *Id.* ¶ 22.
[54] *Id.* ¶ 24.
[55] *Id.* ¶ 25; *See also* Newsmax MSJ at 7.
[56] Am. Compl. ¶ 27.
[57] *See* Saba Dep. at 23:4–24:25; 75:13–81:20; 199:5–215:17; 303:5–24.
[58] Newsmax MSJ. Ex. 78.

stake in the smaller technology company for its investment and a seat on the board, which was occupied by a former adviser to Mr. Chavez.[59]

The New York Times reported that concerns "about possible ties between the owners of Smartmatic and the Chavez government have been well known to the United States foreign policy officials since before the 2004 recall election in which Hugo Chavez, a strong ally of President Fidel Castro of Cuba, won by an official margin of nearly 20 percent."[60]

A professor at Harvard University's John F. Kennedy School of Government and a professor at the Massachusetts Institute of Technology Sloan School of Management, together, conducted a scholarly study, finding statistical evidence that the 2004 Venezuelan election was compromised.[61] Mr. Mugica, in his affidavit, stated: "Elections conducted with Smartmatic technology have been validated by world-renowned institutes such as the Carter Center, the Organization of American States, and the European Union."[62] However, the scholarly study published in May 2012, titled: *In Search of the Black Swan: Analysis of the Statistical Evidence of Electoral Fraud in Venezuela*, addresses why the authors do not agree with the Carter Center's findings.[63]

On October 6, 2006, Congresswoman Carolyn Maloney (D-NY) wrote a letter expressing national security concerns and asking the Committee on Foreign Investment in the United States ("CFIUS") to investigate Smartmatic and its association with the Venezuelan government.[64] In December 2006, in response to the CFIUS investigation, Smartmatic announced it planned to sell its U.S. subsidiary Sequoia Voting Systems, Inc.[65] Congresswoman Maloney noted that

---

[59] *Id.*
[60] *Id.*
[61] *Id.* at Ex. 76-78.
[62] Smartmatic MSJ. Ex. 135 ¶ 34.
[63] Newsmax MSJ, Ex. 76 p. 19.
[64] *Id.* at Ex. 7.
[65] Saba Dep. at 158:2–11.

Smartmatic decided to sell Sequoia, rather than complete the CFIUS investigation.[66] Also, in 2006, "a Chicago alderman raised questions about potential ties between Sequoia and the Venezuelan government when the company's machines were used in the March 2006 Chicago primaries and did not produce results for days."[67]

After the 2008 U.S. President election, there were reports of miscounted votes in Cook County, Illinois at the precinct that used the Sequoia equipment that Smartmatic delivered.[68] "In 2010, Dominion Voting Systems Corporation ("Dominion"), a competitor of Smartmatic, acquired Sequoia's assets."[69]

"Smartmatic continued to provide election technology and services in various Venezuelan elections through July 2017.[70] Smartmatic's Venezuelan ties again drew international scrutiny when the company provided technology and services for Venezuela's elections for the creation of the National Constituent Assembly on July 30, 2017."[71]

## D. SMARTMATIC'S HISTORY IN THE PHILIPPINES

In 2010, a Filipino publication reported Smartmatic failed to disclose "secret backdoors" in its precinct count optical scanner (PCOS), which potentially allowed unauthorized control over the system and vote manipulation.[72] In March 2016, "a columnist at the *Philippine Daily Inquirer* claimed that Smartmatic's machines could be manipulated, and elections conducted by the company could not be trusted."[73]

---

[66] Newsmax MSJ at 10.
[67] *Id.* at 9. *See also* Saba Dep. at 161:6–167:11.
[68] *Id.*
[69] Newsmax MSJ at 10; *see also* Saba Dep. at 167:22–168:11.
[70] Newsmax MSJ at 9.
[71] *Id.*
[72] *Id.* at 10
[73] *Id.*

In 2017, "*The Manila Times* reported that three Smartmatic employees and employees of the Republic of the Philippines Commission on Elections ("COMELEC") had been charged with changing the script in the transparency server on election night [in May 2016] without authorization."[74] In 2019, Filipino President Rodrigo Duterte recommended that COMELEC replace Smartmatic with a new technology provider due to concerns that Smartmatic's system was not accurately counting Filipinos' votes.[75]

In August 2017, Smartmatic, its executives, and employees came under criminal scrutiny in the Philippines.[76] The Philippines' National Bureau of Investigation's Anti-Fraud Division ("NBI") began investigating an alleged bribery and "money-laundering scheme involving former COMELEC Chairman Andres Donato Bautista, Smartmatic, and its executives."[77]

The U.S. Department of Homeland Security's Homeland Security Investigations ("HSI"), thereafter, started its investigation into the same.[78] On September 19, 2023, after the HSI investigation, the Department of Justice filed a criminal complaint against Mr. Bautista in the Southern District of Florida.[79] Mr. Bautista was charged with "receiving a $4 million bribe as part of a money laundering conspiracy to conceal a scheme involving four unnamed "Co-Conspirators" and four unnamed companies in exchange for three lucrative contracts, worth approximately $199 million, for voting machines and related election services in the Philippines in 2015 and 2016."[80] During their depositions, Mr. Mugica and Mr. Piñate confirmed the

---

[74] *Id.* at 11. *See also* Ex. 79.
[75] Newsman MSJ at 11.
[76] *Id.*
[77] *Id. See United States v. Bautista,* No.1:23-mj-03829 (S.D. Fla. Sept. 19, 2023).
[78] *Id.*
[79] *Id.* at 12.
[80] *Id.*

unnamed individuals are Smartmatic executives and employees and the unnamed companies are Smartmatic entities.[81]

Smartmatic is also being investigated in the United Kingdom for the same alleged misconduct related to the 2016 Philippines election.[82]

On November 29, 2023, because of the NBI investigation, COMELEC disqualified Smartmatic from participating in the procurement process for the 2025 election in the Philippines.[83]

## E. Smartmatic's Role in the 2020 Election

In 2018, Los Angeles County selected Smartmatic to aid in the manufacture and implementation of a new election system in the County.[84]   Specifically, Los Angeles County has a "Voting Solutions for All People" ("VSAP") initiative, which is intended to ensure greater voter participation through "convenient, accessible, and secure" voting options.[85]

Smartmatic and Los Angeles County entered into a contract whereby Smartmatic would "manufacture (hardware and software) and implement new custom-designed [ballot marking devices]" as part of the VSAP initiative.[86]  For the Election, Smartmatic provided the following election services for Los Angeles County: "(1) engineered and manufactured the [ballot marking device] hardware," "(2) programmed and installed the [ballot marking device] software," "(3) led the California certification process," "(4) created the backend software to manage the devices," "(5) provided systems integration services," "(6) built the VSAP operations center," "(7) handled logistics and setup/breakdown of vote centers," "(8) oversaw real-time data management for

---

[81] *Id. See* Ex. 10 at 493:1–6, 494:1–5, 504:15–507:6, 507:10–508:11, 509:3–510:5.
[82] Newsmax MSJ, Ex. 12.
[83] *Id.* at Ex. 13.
[84] Am. Compl. ¶ 46.
[85] *Id.* ¶¶ 48-9.
[86] *Id.* ¶ 51.

deployment," and "(9) supplied Help Desk services on Election Day."[87]  Smartmatic notes that the Election in Los Angeles County, the largest voting jurisdiction in the United States, was flawless from a technological perspective.[88]

Smartmatic did not play a role in the Election outside of Los Angeles County.[89] Smartmatic's "technology, software, equipment, and services" were not used outside of Los Angeles County in the Election.[90]  Smartmatic did not license or contract "with any third party, including other election technology companies [*i.e.*, Dominion], for the use of Smartmatic's technology, software, machines or services" during the Election.[91]  Smartmatic played no role in the states with close vote tallies, such as Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin.[92]  "Apart from commenting on its role in the [Election] in Los Angeles County, Smartmatic made no public comments about the [Election]" before Newsmax began reporting on the Election.[93]

In March 2020, Politico reported on Los Angeles County's use of Smartmatic's technology, and called it a "risky voting experiment."[94]  Politico stated that Smartmatic's machines' "security gaps, if left unfixed, could provide a gateway for a rogue election staffer or someone else with physical access to alter software on the voting machines or their back-end computer systems, possibly changing votes or otherwise disrupting the presidential race."[95]  The

---

[87] *Id.* ¶ 53.
[88] *See id.* ¶¶ 57-8.
[89] Am. Compl. ¶ 60.
[90] *Id.*
[91] *Id.*
[92] *Id.* ¶ 61.
[93] *Id.* ¶ 62.
[94] Newsmax MSJ at 7. *See* Kim Zetter, Los Angeles County's risky voting experiment (March 3, 2020) https://www.politico.com/news/2020/03/03/los-angeles-county-voting-experiment-119157.
[95] *Id.*

12

report also noted the Smartmatic's questionable and controversial record, stating, "critics have expressed concerns about the company that built the system, U.K. based Smartmatic."[96]

## F. POST ELECTION MEDIA COVERAGE

On November 6, 2020, President Biden won the Election; however, then-President Trump stated that the election was far from over and filed multiple lawsuits challenging the Election results.[97] The lawsuits raised concerns with Dominion and Smartmatic's voting equipment and election technology and claimed to have evidence "that the companies facilitated voter fraud and electronic vote manipulation in the election."[98] As discussed above, in 2009, Dominion entered into "intellectual property licensing agreements" with Smartmatic and acquired Sequoia's assets in 2010 which were owned by Smartmatic.[99]

In November 2020, then-President Trump stated, on X, that Dominion's machines are "rigged," Dominion deleted 2.7 million votes for Trump nationwide, and claimed he won the election.[100] At the same time, Sidney Powell used her X account to state, "Dominion Machines [are] engineered by China, Venezuela, and Cuba."[101] On November 16, 2020, within two weeks of the Election, The New York Times reported that then-President Trump had "posted over 300 tweets attacking the integrity of the vote count."[102] "RNC employees, the former Mayor of New York City and U.S. Attorney for the Southern District of New York, a former General and National Security Advisor, a former federal prosecutor, the former Governor of Arkansas, current

---

[96] *Id.*

[97] Newsmax MSJ at 15. *Donald J. Trump for President, Inc. v. Hobbs*, No.CV2020-14248 (Ariz. Sup. Ct. Nov. 7, 2020); *Donald J. Trump for President, Inc. v. Benson*, No.1:20-cv-1083 (W.D. Mich. Nov. 11, 2020); *Wood v. Raffensperger*, No.1:20-cv-4651 (N.D. Ga. Nov. 17, 2020); *Pearson v. Kemp*, No.1:20-cv-4809 (N.D. Ga. Nov 25, 2020); *Feehan v. Wisconsin Elections Commission*, No.2:20-cv-1771 (E.D. Wis. Dec. 1, 2020).

[98] Newsmax MSJ at 16.

[99] *Id. See also Smartmatic Int'l Corp. v. Dominion Voting Sys. Int'l Corp.,* 2013 WL 1821608, at *1 (Del. Ch. May 1, 2013).

[100] Newsmax MSJ at 16.

[101] *Id.* at 17.

[102] *Id.*

and former members of Congress, then-President Trump, his legal team, representatives, people claiming an affiliation with then-President Trump and other affiliates" (collectively, "Trump Affiliates") "publicly claimed that the 2020 Election was manipulated through the exploitation of election technology supplied by several government contractors; Smartmatic being one of them."[103]

Lin Wood, an attorney and Trump Affiliate, initiated a lawsuit in Georgia, "aiming to overturn the election results."[104] With this lawsuit, a former security guard for Mr. Chavez submitted an affidavit stating he assisted Mr. Chavez in manipulating elections using Smartmatic machines and claiming that: "the software and fundamental design of the Dominion electronic electoral system and its software are based on software that is a derivative of the Smartmatic Electoral Management System."[105]

Ms. Powell and Mr. Wood, together, filed another lawsuit in Georgia, that cited to an affidavit from a witness who claimed that "Smartmatic and Dominion were founded by foreign oligarchs and dictators" to manipulate votes and ensure that "Venezuelan dictator Hugo Chávez never lost another election."[106]

These allegations drew the attention of many of the nation's major news organizations, including Fox News, CNN, and The New York Times.[107]

### G. NEWSMAX'S REPORTING ON THE ELECTION

From July 2020 to the week before the Election, Newsmax "averaged 58,000 viewers from 7 to 10 p.m. on weekdays."[108] At that time, Newsmax's numbers were not comparable to

---

[103] *Id.*
[104] *Id.* at 18.
[105] *Id; See Wood*, No.1:20-cv-4651.
[106] Newsmax MSJ at 19; *Pearson*, No 1:20-cv-4809.
[107] Newsmax MSJ at 20.
[108] Am. Compl. ¶ 75, Ex. 146.

Fox News' massive following.[109] The week after the Election, Newsmax's ratings jumped ten-fold from its pre-Election numbers.[110] In the wake of the Election, Newsmax called attention to the fact that then-President Trump posted Newsmax clips to his followers on X.[111] Within three days of the Election, Newsmax's viewership surpassed Fox Business and CNBC.[112] These increases in coverage led to more viewers and more money for Newsmax.[113] Newsmax "averaged approximately 242,000 prime-time viewers in the fourth quarter of 2020."[114]

Smartmatic states Newsmax engaged "in publishing false information about Smartmatic during the disinformation campaign, but it also did so with ill-will and improper motives for self-preservation, self-promotion, and financial and other gains."[115] Specifically, Smartmatic alleges Newsmax "did not mind destroying Smartmatic's reputation because it served its financial interests," and "this was not about providing fair and neutral reporting of a debate ."[116] Smartmatic also maintains "this was about trying to beat Fox News, endearing itself to the millions of Americans who supported President Trump, and making money."[117]

Starting on November 10, 2020, through December 2020, Newsmax aired statements from Trump Affiliates and published multiple articles on its website concerning the controversy surrounding the Election.[118] Newsmax's published articles discussed "the skepticism expressed by federal judges regarding" the lawsuits filed by Trump Affiliates; "views of the secretaries of state, attorneys general, and senators. . . who stated that there was no evidence of widespread

---

[109] *Id.* ¶ 75.
[110] *Id.* ¶ 76. Newsmax's daytime viewership also increased by a multiple of ten, and the number of daily active users on its mobile app increased fourteen-fold from pre- to post-Election. *Id.* ¶ 76, Exs. 146, 148.
[111] *Id.* ¶ 77, Ex. 150.
[112] *Id.* ¶ 78, Ex. 151.
[113] *Id.* ¶ 78.
[114] Newsmax MSJ at 20.
[115] Am. Compl. ¶ 412.
[116] . *Id.* ¶ 230.
[117] *Id.*
[118] Newsmax MSJ at 23.

voter fraud;" and the difficulties then-President Trump "would encounter in overturning the [Election] results."[119]

On December 11, 2020, Newsmax received a letter from Smartmatic's counsel demanding a retraction of allegedly defamatory reporting contained in Newsmax's coverage of the Election.[120] Newsmax responded by issuing a public clarification titled "Facts About Dominion, Smartmatic You Should Know" and explaining: "No evidence has been offered that Dominion or Smartmatic used software or reprogrammed software that manipulated votes in the 2020 election."[121] Newsmax's statement also stated that it had "not reported as true certain claims made about these companies," and informed its audience that Newsmax has no evidence that: "(1) either Dominion or Smartmatic owns the other, or has any business association with each other; (2) Dominion uses Smartmatic software or vice versa; (3) Dominion or Smartmatic used software that manipulated votes in the 2020 Election; or (4) George Soros or Hugo Chávez owned Smartmatic."[122]

On December 21, 2020, Newsmax extended an invite for a Smartmatic representative to appear on a Newsmax broadcast and address on air anything Smartmatic considered to be inaccurate.[123] Smartmatic did not respond to the written invitation, or the follow-up calls from Newsmax's counsel.[124]

On October 27, 2021, Smartmatic provided Newsmax "a list of defamatory statements about Smartmatic that were broadcast and published by Newsmax" and demanded Newsmax

---

[119] *Id.* at 23-4.
[120] Am. Compl. ¶ 238.
[121] Newsmax MSJ at 25.
[122] *Id.* at 26.
[123] *Id.* at 26. Ex. 24.
[124] *Id.*

"fully and completely retract these defamatory statements."[125] Subsequently, Smartmatic filed this action.

The Amended Complaint alleges Newsmax's "disinformation" about Smartmatic focused on the following themes:

> Smartmatic's election technology and software were widely used in the 2020 U.S. election;

> Smartmatic fixed, rigged, and stole 2020 U.S. election for Joe Biden and Kamala Harris;

> Smartmatic's election technology and software (1) were compromised or hacked during the 2020 U.S. election and (2) sent votes overseas to be compromised or hacked;

> Smartmatic was founded and funded by corrupt dictators from socialist and communist countries; and

> Smartmatic's election technology and software were designed to and have fixed, rigged, and stolen elections before.[126]

On the other hand, Newsmax categorized the statements as allegedly defamatory statements made either by third parties unaffiliated with Newsmax or by Newsmax personnel.[127] The allegedly defamatory statements made by third parties include allegations or suggestions that: (1) "Smartmatic was either influenced by foreign entities or had foreign origins;" (2) Smartmatic's software was problematic; and (3) Mr. Neffenger was connected to President Biden's team.[128]

In the Smartmatic Motion, Smartmatic refers to twenty-four publications that were allegedly defamatory (the "At-Issue Statements"). Smartmatic is moving for summary judgment

---

[125] Am. Compl. at Ex. 55.
[126] Id. ¶ 173.
[127] Newsmax MSJ at 29.
[128] Id. at 28-30.

only as to the At-Issue Statements.  Newsmax, in the Newsmax Motion, is moving for summary judgment on all claims asserted in the Amended Complaint.

### H. Newsmax's Internal Communication

On November 12, 2020, Mr. Ruddy drafted an email (the "November Email")—circulated to Newsmax's hosts and producers by Mr. Jacobson—explaining Newsmax's editorial position and the lack of evidence supporting voter fraud allegations, stating:

Newsmax's Editorial Position:

We are not calling the election for Joe Biden because we believe that the voters and state election authorities should make that decision, not media organizations.

Media organizations that so clearly were wrong in their polls which showed a landslide election for Joe Biden should not be the arbiters of the election results.

Newsmax cannot project Biden the winner because Pres. Trump is contesting the election in several states, including races where the vote difference is less than 1 percent. In Georgia it is less than a quarter of a percent. We believe the President has a right to have a recount or review of these votes.

In the 2000 election when AI Gore contested the Fla results, media organizations withheld a projection on the winner until mid-December.

We believe most states will certify by Nov. 23rd. Based on state certifications of closely contested races, Newsmax will call the race for the winner.

Vote fraud:

*Newsmax does not have evidence of widespread voter fraud. We have no evidence of a voter fraud conspiracy nor do we make such claims on Newsmax.*

We have reported on significant evidence of widespread election irregularities and vote fraud. We will continue to report on that.

*We believe we should not censor allegations made by the President or his lawyers or surrogates. Our job is not to filter the news but report information and allow Americans to decide.*

The President has made several legal challenges to results in several states, we will continue to report on these.

18

Newsmax will fully accept and acknowledge the President elect as decided by the electoral college. We will encourage a smooth transition of power from one term to the next, whoever the winner is.

*When discussing voter/election fraud continue to use terms such as "alleged" and avoid any appearance of endorsement of conspiracy theories etc.* [129]

On November 12, 2020, Mr. Kanofsky sent Newsmax's producers and hosts a fact sheet that Newsmax received from Dominion titled *Setting the Record Straight* ("Dominion Fact Sheet"), which stated, in relevant part:

First and foremost, Dominion Voting Systems categorically denies any claims about any vote switching or alleged software issues with our voting systems. Dominion systems continue to reliably and accurately count ballots, and state and local election authorities have publicly confirmed the integrity of the process.

This year, despite the fact that voting has proceeded smoothly in all 28 states where our systems are used, close vote counts in several battleground states coupled with delayed results reporting have created the opportunity for a number of company-focused rumor and disinformation campaigns to spread online.

No credible reports or evidence of any software issues exist. While no election is without isolated issues, Dominion Voting Systems are reliably and accurately counting ballots. State and local election authorities have publicly confirmed the integrity of the process.

All U.S. voting systems must provide assurance that they work accurately and reliably as intended under federal U.S. Election Assistance Commission and state certification and testing requirements. Election safeguards – from testing and certification of voting systems, to canvassing and auditing – prevent malicious actors from tampering with vote counts and ensure that final vote tallies are accurate. [130]

On November 19, 2020, Mr. Kanofsky emailed Newsmax's producers and hosts a fact sheet that Newsmax received from Smartmatic titled *Smartmatic Fact-checked* ("Smartmatic Fact Sheet"), which stated, in relevant part:

Over the last two decades, Smartmatic has registered and counted nearly 5 billion auditable votes without a single spoiled vote or security breach.

---

[129] Smartmatic MSJ at 43. Ex. 154 (emphasis added) (D.I. 921).
[130] Smartmatic MSJ at 43-4. Ex. 155 (D.I. 921).

Smartmatic designed its technology to enable all election stakeholders to audit the entire process.

Smartmatic software has been open to audits by all political parties in all countries where it operates. All audits of elections that have used Smartmatic technology have validated the accuracy of the results, confirming the integrity of the election.

Elections conducted with Smartmatic technology have been validated by world-renowned institutions such as the Carter Center, the United Nations, the Organization of American States, and the European Union. All claims about the integrity of the system or the accuracy of the results have been dismissed.

*Smartmatic has no ties to governments or political parties of any country.*[131]

The Smartmatic Fact Sheet also included the following question and answers:

Who owns Smartmatic? Smartmatic was founded in Boca Raton, Florida in 2000. Two of the founders, Antonio Mugica and Roger Piñate, continue to run the company as CEO and President, respectively. The majority of shares (83%) are held by SGO, a company owned by the Mugica and Piñate families. The remaining shares are held by employees (10%) and angel investors (7%).

*Is Smartmatic a Venezuelan company? No.* Smartmatic was founded and incorporated in the U.S. It is now headquartered in London, UK.

Does Smartmatic own any other voting machine company? No.

*Has Smartmatic owned any voting machine company in the USA? Smartmatic owned Sequoia Voting systems and sold it in 2007.*

Is Smartmatic's software used in other company's voting machines? No. Smartmatic's software is not licensed or otherwise used by other companies.

Where were Smartmatic products used during the 2020 US election? Smartmatic technology was only used in Los Angeles County, CA. It was not used anywhere else.

On December 19, 2020, Newsmax published an article titled *Facts About Dominion,*

*Smartmatic You Should Know* (the "December Article"), explaining:

Newsmax has found no evidence either Dominion or Smartmatic owns the other, or has any business association with each other.

We have no evidence Dominion uses Smartmatic's software or vice versa.

---

[131] Smartmatic MSJ at 45-6. Ex. 162 (D.I. 928).

No evidence has been offered that Dominion or Smartmatic used software or reprogrammed software that manipulated votes in the 2020 election.

Smartmatic has stated its software was only used in the 2020 election in Los Angeles, and was not used in any battleground state contested by the Trump campaign and Newsmax has no evidence to the contrary.

Smartmatic is a U.S. company and not owned by the Venezuelan government, Hugo Chavez or any foreign official or entity.

Smartmatic states it has no operations in Venezuela. While the company did election projects in Venezuela from 2004 to 2017, it states it never was founded by Hugo Chavez, nor did it have a corrupt relationship with him or the Venezuelan government.[132]

During this time, Mr. Sellers (host) and Mr. Burke (producer) had the following

conversation thread (the "Sellers/Burke Conversation"), questioning the Election reporting:

November 9: Sellers: "How long are we going to have to play along with election fraud?"

November 9: Sellers: "Trump's MO is always to play victim [] And answer this question. Is there anything at all that could result in another election? The answer is no. and are there enough votes that could be switched or thrown out from fraud or irregularities? No."

November 13: Sellers: "So the election official, who did his job and is assuring Americans that their votes are valid, will get fired because Trump's narrative is that there was widespread fraud, for which there is no evidence."

December 11: Sellers: "But I feel good that we can start slamming Biden instead of defending crazy []"

December 16: Sellers: "Yes. The election was stolen. Trump gets to stay. [] Same in Pa. same in Michigan. Same in AZ. [] Of course, all of the down ballot tickets must be wrong too. [] So the dozen Republicans who won don't get to go." Childers: "Geez–I get it. Good night everyone." Sellers: "This is just the way Jerry and I talk." Childers: "Got it." Sellers: "It's all fodder for good TV. [] Which is what we do."

---

[132] Smartmatic MSJ at 47.

December 17: Sellers: "I'm a little uncomfortable with how much [Heather] is trying to promote these conspiracy theories [] We should let the guests do it[.]" Burke: "absolutely [] just one more day to go[.]"[133]

## I. THE ELECTION INVESTIGATION

While former-President Trump's affiliates were making statements questioning the integrity of the Election, several federal and state agencies addressed and denied the allegations.[134]

On November 12, 2020, the Elections Infrastructure Government Coordinating Council and Election Infrastructure Sector Coordinating Executive Committees, jointly, announced that the Election was "the most secure in American history" and there was no evidence of voting systems changing, deleting, or losing votes.[135] On November 13, 2020, the Commissioner for the U.S. Election Assistance Commission announced that there was "no widespread fraud or malfunction" that would change the results of the Election.[136] On November 16, 2020, many election security and computer science experts stated they are aware of the allegation concerning the Election, however, the allegations are "unsubstantiated or technically incoherent."[137] On December 1, 2020, U.S. Attorney General William Barr announced that upon its investigation, the Department of Justice found no "fraud on a scale that could have effected a different outcome in the election."[138]

On December 22, 2022, The Select Committee to Investigate the January 6th Attack on the United States Capital conducted an 18-month investigation that concluded: "Not a single witness— nor any combination of witnesses—provided the Select Committee with evidence

---

[133] *Id* 86-7.
[134] *Id.* at 58-9.
[135] *Id.* Ex. 188.
[136] *Id.* Ex. 190.
[137] *Id.* Ex. 191.
[138] *Id.* Ex. 193.

demonstrating that fraud occurred on a scale even remotely close to changing the outcome in any State."[139]

To date, there are no investigations or reports that concluded the Election was compromised or that Smartmatic or Dominion manipulated the votes through its voting machines.[140]

## III. PARTIES' CONTENTIONS

### A. THE NEWSMAX MOTION

#### 1. Newsmax

Newsmax argues that both Florida law[141] and the First Amendment of the United States Constitution protect media organizations, such as Newsmax, when the organization engages in neutral reporting on a matter of public concern.[142] Newsmax contends that even putting the neutral reporting protection aside, some of the alleged defamatory allegations were true.[143] Newsmax also argues that, under Florida law, Smartmatic must show evidence of actual damages caused by Newsmax's reporting. Newsmax maintains that Smartmatic has produced no evidence of any actual damages.[144] And even if the Court finds Newsmax liable for damages, Newsmax asserts that Smartmatic's damages claim would still fail because Smartmatic's customers are government officials who are prevented from allowing media reports to affect contractual relationships per public procurement rules.[145]

---

[139] *Id.* Ex. 197 at 47.
[140] Smartmatic MSJ at 60.
[141] On May 21, 2024, the Court issued a preliminary order holding that Florida substantive law will apply in this civil action (D.I. 745).
[142] Newsmax MSJ at 48.
[143] *Id.* at 61.
[144] *Id.* at 83.
[145] *Id.* at 95.

23

Newsmax also argues that the alleged defamatory statements are not actionable as defamation because they are not "of and concerning" Smartmatic.[146] Newsmax asserts that Smartmatic has not presented evidence to prove the falsity element of its defamation claim.[147] Newsmax claims that Smartmatic is a limited public figure, therefore, Smartmatic must show actual malice which Smartmatic cannot do.[148] As a result, Newsmax argues Smartmatic also cannot recover punitive damages under Florida law.[149]

Finally, Newsmax contends that Smartmatic failed to serve a pre-suit notice—as required by Florida law—on Newsmax specifying all the allegedly defamatory statements in the Amended Complaint so the same should be dismissed.[150] That said, Newsmax maintains it exercised its constitutional right of free speech in connection with a public issue, so the Florida anti-SLAPP statute applies to this action.[151]

### 2. *Smartmatic*

Smartmatic, in opposition, contends that Florida law does not recognize an absolute privilege and Newsmax, a media organization, "should be held responsible for the publication of false reports when done with the requisite fault (negligence or actual malice)."[152] Smartmatic goes on to argue that, even if there was a neutral reporting privilege under Florida law, Newsmax's reporting was not neutral nor disinterested.[153] Smartmatic maintains that the evidence now demonstrates Smartmatic is not a limited purpose public figure under Florida law, so Smartmatic only has to show that Newsmax was negligent in its reporting.[154] Smartmatic also

---

[146] *Id.*
[147] *Id.* at 61.
[148] *Id.* at 66-7.
[149] *Id.* at 120.
[150] *Id.* at 125.
[151] *Id.* at 127.
[152] Smartmatic Opp. at 2.
[153] *Id.* at 28.
[154] *Id.* at 12.

maintains that it has properly established every element of defamation, including "of and concern" and "falsity."[155]

Furthermore, Smartmatic believes it is entitled to presumed damages as the alleged defamatory statements qualify as defamation *per se* published with actual malice.[156]  Smartmatic argues that presumed damages "have long served the critical public policy of allowing the plaintiff to vindicate its name" and should be allowed under Florida law or Delaware public policy.[157]  Smartmatic explains how Smartmatic's expert reports are sufficient evidence to establish Newsmax's reporting harmed Smartmatic's reputation and caused economic losses.  As such, Smartmatic is entitled to general and special damages.[158]  Smartmatic also argues that it provided evidence of actual malice and express malice, therefore punitive damages is a factual matter for the jury to decide.[159]

With that, Smartmatic believes the Court should rule one of the three following ways: (i) Florida does not recognize a neutral reporting privilege; (ii) actual malice negates any privilege; or (iii) the At-Issue Statements were not neutral and disinterested, so privilege does not apply.[160]  All three options would require the Court to reject Newsmax's privilege defense.[161]

## B. THE SMARTMATIC MOTION

### 1. *Smartmatic*

Smartmatic believes it has satisfied its burden for summary judgment because Mr. Ruddy wrote to Newsmax's executives stating that, "Newsmax does not have the evidence of

---

[155] *Id.* at 38-40.
[156] *Id.* at 50. "It would violate 100 years of jurisprudence to deprive a plaintiff of presumed damages for defamation *per se* published with actual malice." *Id.*
[157] Smartmatic Opp. at 52, 61.
[158] *Id.* at 63, 98.
[159] *Id.* at 114.
[160] *Id.* at 33-4.
[161] *Id.*

widespread voter fraud" and "no evidence of voter fraud conspiracy."[162] Smartmatic asserts it is entitled to summary judgment on liability for the At-Issue Statements that Newsmax published between November 10, 2020, and December 18, 2020.[163] Smartmatic believes that the Court should allow a jury to determine damages only.[164] Smartmatic contends that each At-Issue Statement satisfies the elements of defamation including the "of and concerning" element" as the publications falsely stated or implied that Smartmatic participated "in rigging the 2020 election."[165]

Smartmatic also argues it is entitled to summary judgment on actual malice because Newsmax's executives, hosts and producers acted with reckless disregard for the truth.[166] Smartmatic contends that Newsmax "possessed accurate information debunking what it stated and implied about Smartmatic," but Newsmax still purposefully avoided investigating its claims and did not evaluate the third-party guests.[167]

### 2. Newsmax

Newsmax opposes, contending Smartmatic is moving for summary judgment on liability by "attempting to side-step Florida law's unequivocal requirements for establishing liability and damages in defamation actions."[168] Specifically, Newsmax argues: (i) "Smartmatic tries to evade Florida's mandate that allegedly defamatory material is subject to a statement-by-statement analysis with proper context considered." (ii) Smartmatic "dilute[s]" the actual malice standard under Florida and First Amendment law; (iii) Smartmatic misstates Florida's law on neutral reporting and fair reporting privileges; and (iv) Smartmatic "ignores that Florida law's special

---

[162] Smartmatic MSJ at 1.
[163] *Id.* at 2.
[164] *Id.* at 4-6.
[165] *Id.* at 53.
[166] *Id.* at 68, 84.
[167] *Id.* at 118.
[168] Newsmax Opp. at 1.

treatment of media defendants requires proof of actual damages and causation even in defamation *per se* cases."[169]

## IV. STANDARD OF REVIEW

Civil Rule 56 governs motions for summary judgment.[170] "The Court will grant summary judgment if, after viewing the record in a light most favorable to the non-moving party, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law."[171] On a motion for summary judgment, the Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[172] The moving party bears the initial burden of showing the motion is supported by the undisputed facts.[173] If the moving party carries its burden, then the burden shifts to the non-moving party to show a genuine issue of material fact exists, and that a trial is necessary.[174] If the Court concludes a more thorough inquiry into, or development of, the record would clarify the law or its application, the Court may deny summary judgment.[175]

## V. DISCUSSION

### A. SMARTMATIC IS A LIMITED PURPOSE PUBLIC FIGURE

Under Florida law, courts employ a two-step analysis to determine whether a plaintiff is a limited purpose public figure.[176] Step one is whether there is a "public controversy," meaning

---

[169] *Id.* at 2-4.
[170] Super. Ct. Civ. R. 56.
[171] *CVR Refining., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Nov. 23, 2021) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)); Del. Super. Ct. Civ. R. 56.
[172] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977); *Merrill*, 606 A.2d at 99; *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962)).
[173] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[174] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[175] *See Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918-19 (Del. 1965).
[176] *See Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. Dist. Ct. App. 2002).

whether a "reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution."[177] Step two is "whether the plaintiff played a sufficiently central role in the instant controversy to be considered a limited purpose public figure for the purposes of that controversy."[178] Whether a plaintiff is a public figure is a question of law.[179]

Newsmax maintains Smartmatic is a limited purpose public figure under Florida law because the allegedly defamatory statements were on matter of public concern and Smartmatic has played a sufficiently central role in this controversy.[180] Newsmax also argues that the Court previously ruled, under Florida law, Smartmatic is a limited purpose public figure, and that ruling is law of the case.[181]

Smartmatic believes the Court "assumed that Smartmatic played a sufficient central role in the controversy" but now the evidence demonstrates that Smartmatic is not a limited purpose public figure.[182] Specifically, Smartmatic argues that Smartmatic could not have played a sufficiently central role to the 2020 Election controversy because: (i) only Los Angeles County used Smartmatic's services; (ii) the 2020 Election controversy "had nothing to do with the role that Smartmatic actually played. . ."; (iii) Smartmatic could not have been a part of the public controversy because Smartmatic did not provide voting machines; and (iv) Smartmatic "did nothing to thrust itself into the public controversy about the 2020 election."[183]

Based on the facts available to the Court during the motion for judgment on the pleadings stage, the Court found:

---

[177] *Id.* (citing *Gertz*, 418 U.S. at 323).
[178] *Id.* at 846 (citing *Gertz*, 418 U.S. at 345).
[179] *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).
[180] Newsmax MSJ at 69-70.
[181] *Id.* at 68.
[182] Smartmatic Opp. at 12.
[183] *Id.* at 12-4.

Under Florida law, Smartmatic is a limited purpose public figure. Step one—the "public controversy" step—is satisfied. In *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, the Florida District Court of Appeal found the plaintiff to be a limited purpose public figure. The plaintiff manufactured hydraulic winches, which are employed by "off-road enthusiasts for hauling stranded motor vehicles." The defendant published an article about the plaintiff in its magazine. The Florida court found the plaintiff to be a limited purpose public figure because there was a "pre-existing public controversy in a segment of the population" regarding hydraulic winches versus electric winches, and off-road magazine readers would be "impacted by the resolution of the instant dispute." Similarly, here, there was a "pre-existing public controversy in a segment of the population" regarding the accuracy and integrity of the Election, including its voting software. Moreover, this segment of the population could be "impacted by the resolution" of this litigation. Step two is met because Smartmatic "played a sufficiently central role" in this instant controversy as part of the VSAP initiative in Los Angeles County, the largest voting jurisdiction in the United States.[184]

The Court continues to find that Smartmatic is a limited purpose public figure as the facts, as developed, in this case do not support a different finding. Moreover, the Court does not need to reanalyze step one to determine if this is a "public controversy" because the parties agree that the Election was a matter of public concern. [185]

For purposes of step two, the circumstances surrounding Smartmatic were subject to substantial public debate even before the 2020 Election.[186] In 2006, Congresswoman Maloney requested that the Committee on Foreign Investment in the United States investigate Smartmatic's connection to Venezuela and Mr. Chavez.[187] In 2008, there were reports of miscounted votes in an Illinois precinct that used Sequoia equipment.[188] In 2019, Philippines President Duterte recommended replacing Smartmatic because he had concerns about Smartmatic's technology.[189] In March 2020, Politico reported on Smartmatic's reputation and

---

[184] *Smartmatic USA Corp.,* 2023 WL 1525025, at * 13.
[185] *See* Smartmatic Opp. at 9.
[186] *See Thomas v. Patton*, 2005 WL 3048033, at *2 (Fla. Cir. Ct. Oct. 21, 2005), *aff'd and remanded*, 939 So. 2d 139 (Fla. Dist. Ct. App. 2006).
[187] Newsmax MSJ at 6.
[188] *Id.*
[189] *Id.*

discussed issues with Smartmatic voting machines.[190]  Thus, Smartmatic "could have, and should have, realistically expected" that their involvement in the 2020 Election would have an impact on a national public controversy.[191]

In determining whether a plaintiff is a limited purpose public figure, Florida courts also consider the level of media access available to the plaintiff.[192]  Courts should also examine the "nature and extent of the advertising and publicity campaigns" in the past and pay attention to the marketing strategy that emphasizes the controversy.[193]

Based on the record and Florida case law, Smartmatic is a limited purpose public figure. Smartmatic had access to the media, including access to Newsmax; Newsmax invited Smartmatic to come on air to inform Newsmax viewers that the statements were false and tell its side of the story.  Smartmatic chose not to accept the invitation.  Smartmatic believes it is a private person; however, a private person cannot easily secure access to the media to rebut falsehoods concerning him, like public figures can.[194]

Furthermore, Smartmatic's customers are governments; therefore, Smartmatic must place a bid to obtain a contract with the government to offer its services.  So, Smartmatic understands it could be involved in a national public controversy if its services become a matter of public concern. Similar to public figures and public officials, Smartmatic "voluntarily expose[d] themselves to increased risk of injury from defamatory falsehoods concerning them."[195]

Therefore, the Court continues to find that Smartmatic is a limited purpose public figure.

---

[190] *Id.* at 7.
[191] *See Thomas*, 2005 WL 3048033, at * 2.
[192] *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 846 (Fla. Dist. Ct. App. 2002).
[193] *Id.*
[194] *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339 (1974).
[195] *Id.*

## B. MALICE

### 1. Actual Malice – Under Federal Constitutional Law

If a plaintiff is found to be a limited purpose public figure, the *New York Times v. Sullivan* standard of actual malice will apply.[196] For purposes of this decision and at trial, the standard of actual malice will apply because Smartmatic is a limited purpose public figure.

Actual malice must be shown before a public figure may recover for defamation relating to a public concern.[197] The plaintiff must establish the defendant made a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not."[198] The actual malice test "is not an objective one and the beliefs or actions of a reasonable person are irrelevant."[199] "Rather, we ask whether the defendant instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false."[200]

To satisfy the reckless disregard standard, a plaintiff must show that the defendant "in fact entertained serious doubts as to the truth of [its] publication" or had "a 'high degree of awareness of . . . probable falsity.'"[201] "[T]he state of mind required for actual malice would have to be brought home to the persons in the [defendant's] organization having responsibility for the publication of the [statements]."[202] Failure to investigate a statement's truth or falsity, alone,

---

[196] *See Gertz*, 418 U.S. at 352.
[197] *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).
[198] *Id*; *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773 (1986).
[199] *St. Amant v. Thompson*, 390 U.S. 727, 731 (1986).
[200] *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016); *see also Garrison v. St. of La.*, 379 U.S. 64, 74 (1964)).
[201] *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citing *Garrison v. St. of La.*, 379 U.S. 64, 74 (1964)).
[202] *Sullivan*, 376 U.S. at 287.

is insufficient to establish actual malice.[203]  However, the "purposeful avoidance of the truth" is different.[204]  The plaintiff must establish actual malice by clear and convincing evidence.[205]

Newsmax contends Smartmatic has failed to provide evidence that would permit a reasonable jury to conclude that Newsmax acted with actual malice.[206]  Newsmax also contends the record shows that Newsmax's reporting of the allegations concerning Smartmatic were made by then-President Trump and by individuals unaffiliated with Newsmax.  Newsmax therefore claims it was only providing accurate reports of newsworthy claims.[207]  Moreover, Newsmax maintains it clarified the reporting and "endorsed Smartmatic's denials of the allegations" once the evidence that Trump Affiliates promised to produce did not materialize.[208]  Finally, Newsmax contends that Smartmatic must establish Mr. Ruddy acted with actual malice as he "exercised final editorial authority over all" of the alleged statements.[209]

Smartmatic argues Newsmax's executives acted with reckless disregard of the truth because: (i) the executives either drafted or reviewed the November Email and the December Article; (ii) the executives conceded they did not have evidence supporting the statements and implications made about Smartmatic; (iii) the executives "did nothing to vet the credibility of the guests who appeared" on Newsmax nor did the guest provide documentation to support the statements the guest made; and (iv) Mr. Ruddy had access to then-President Trump, and then-President Trump never mentioned Smartmatic was involved with altering the 2020 Election.[210]

---

[203] *St. Amant*, 390 U.S. at 731-33 (stating "Actual malice requires more than a departure from reasonable journalistic standards.").
[204] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989).
[205] *Hepps*, 475 U.S. at 773.
[206] Newsmax MSJ at 73.
[207] *Id.*
[208] *Id.* at 75.
[209] Newsmax Opp. at 87.
[210] Smartmatic MSJ at 69-83.

For similar reasons, Smartmatic argues Newsmax's hosts and producers also acted with reckless disregard of the truth.[211]

The Court finds there are genuine issues of material facts regarding actual malice. Newsmax reported on allegations regarding the Election and Smartmatic, but there remains a dispute as to whether Newsmax recklessly disregarded the truth. On one hand, Newsmax argues it was simply reporting matter on a public concern and it had no duty to conduct its own investigation. On the other hand, Smartmatic believes Newsmax reported the allegations knowing they were false. The jury must determine if Newsmax was doing what media organizations typically do—inform the public of newsworthy events—or did Newsmax purposely avoid the truth and defame Smartmatic.

A reasonable jury could conclude that Newsmax had sufficient information that the allegations about Smartmatic were false through, *e.g.*, the Dominion Fact Sheet, Smartmatic Fact Sheet, and the statements made by federal and state agencies disclaiming any fraud. Or a reasonable jury could conclude the Dominion Fact Sheet, and Smartmatic Fact Sheet were self-serving and Newsmax properly performed as a media organization and continued informing the public as the allegations unfolded. Newsmax, as a media organization, was not required to conduct its own investigation into the Election, so the fact that the hosts and producers did not have evidence does not necessarily support a finding of actual malice. However, the record is disputed as to whether Newsmax purposely avoided the truth. Accordingly, actual malice is a question for the jury.

---

[211] *Id.* at 84-5.

### 2. *Punitive Damages*

If the jury finds actual malice in Newsmax's reporting, the jury could award punitive damages. Under Florida law, "[w]here allegedly defamatory statements involve a matter of public concern, punitive damages can be recovered only where actual malice is shown."[212] "Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition"[213] Although states "possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards."[214] Therefore, punitive damages is also a question for a jury to determine.

### 3. *Express Malice – Under Florida Law*

Under Florida common law, express malice is "necessary to overcome the common-law qualified privilege."[215] Whether express malice exists is a question of fact.[216] Express malice "is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff."[217] Express malice may be established indirectly, by proving a series of acts which, in the totality of surrounding circumstances, "are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive."[218] "Strong, angry, or intemperate words do not alone show

---

[212] 19A Fla. Jur 2d Defamation and Privacy § 133 (citing *Rabren v. Straigis*, 498 So. 2d 1362 (Fla. Dist. Ct. App. 1986)).

[213] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).

[214] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).

[215] *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984) (holding that "…there must be a showing that the speaker used his privileged position to gratify his malevolence."); *Loeb v. Geronemus*, 66 So. 2d 241, 244 (Fla. 1953) (holding express malice which negates a "qualified privilege must be actual and not merely inferred from falsity").

[216] *McCurdy v. Collis*, 508 So. 2d 380 (Fla. Dist. Ct. App. 1987) (stating "[p]roof of malice in fact involves production of evidence from which the jury could conclude that the challenged statement was motivated by ill will and the desire to harm").

[217] *Nodar*, 462 So. 2d at 806-7.

[218] *Southern Bell Telephone & Telegraph Company v. Roper,* 482 So.2d 538, 539 (Fla. 3d DCA 1986); 29 Am. Jur. 2d Evidence § 361.

34

express malice;" rather, the plaintiff must show that the speaker used his privileged position "to gratify his malevolence."[219] "The malice which vitiates a qualified privilege must be actual and not merely inferred from falsity, etc."[220] Moreover, the privilege is not destroyed merely because the speaker feels "hostility or ill will toward the plaintiff."[221]

The evidentiary burden to show express malice is preponderance of the evidence—less than the clear and convincing standard applicable to actual malice.[222] "Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege," then express malice can be inferred, and the privilege is destroyed.[223]

Newsmax argues Smartmatic has not put forth any evidence that shows Newsmax's primary motivation for publishing the allegedly defamation statements was to injure Smartmatic personally.[224] Newsmax notes that Smartmatic has consistently alleged that Newsmax published the statements for "self-preservation, self-promotion, and financial and other gains because it was motivated, in part, by the desire for ratings, to cater to individuals and companies supporting President Trump, and to avoid losing viewers to competing media organizations like Fox News and OANN."[225]

Smartmatic believes because it "has already established" actual malice as a matter of law, it has also established express malice which is a lesser standard than actual malice.[226] And if "express malice is not automatically satisfied, Smartmatic has more than enough evidence of

---

[219] *Id*. at 811.
[220] *Loeb*, 66 So. 2d at 244.
[221] *Id.*
[222] *Id. Miami Herald Pub. Co. v. Ane*, 458 So. 2d 239 (Fla. 1984).
[223] *Nodar*, 462 So. 2d at 811.
[224] Newsmax MSJ at 122.
[225] *Id*. at 123.
[226] Smartmatic Opp. at 114.

express malice for the question of punitive damages to go to the jury."[227] Smartmatic contends because Newsmax published the statements without proof and without conducting its own investigation, the Court can infer Newsmax's intended to harm Smartmatic.

The Court finds that Smartmatic conflates the law of express malice and actual malice. The two are distinct otherwise the common law privileges would not exist in a media case involving a public figure. "Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."[228] Either way, Smartmatic has not properly pled express malice in its Amended Complaint nor has Smartmatic put forth any evidence that would support a finding of express malice.

There is no evidence that Newsmax acted with evil intent towards Smartmatic or that Newsmax's proceeded with the intention to hurt Smartmatic. The record is devoid of facts showing that Newsmax harbored any evil or a motive arising from spite or ill as to Smartmatic. Moreover, the November Email—sent to Newsmax's hosts and producers before Newsmax received the Smartmatic Fact Sheet—clearly states Mr. Ruddy's position on reporting the Election. Mr. Ruddy makes it clear to his staff that "Newsmax cannot project Biden the winner because Pres. Trump is contesting the election. . ." and he believes "the President has a right to have a recount or review of these votes."[229]

There is no reasonable way to conclude that Mr. Ruddy was acting from spite or ill will; however, it is reasonable to conclude Mr. Ruddy found it appropriate to give then-President Trump and Trump Affiliates a platform to explain their Election allegation because Mr. Ruddy believed that "the President has a right to have a recount or review of these votes."[230] The

---

[227] *Id.*
[228] *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511 (1991).
[229] *See* D.I. 920.
[230] *See id.*

November Email and the numerous depositions of Newsmax employee shows the same. The record makes it clear that Newsmax would have reported on the same allegations, no matter who was providing the voting machines. Contrary to Smartmatic's allegation, this was not a "campaign" to defame Smartmatic and a capitalistic motive does not support a finding of express malice. In viewing the record "in light of the totality of surrounding circumstances," as Smartmatic suggested the Court do, the evidence does not support a finding of conduct motivated by spite, ill-will, or other bad motive.[231]

To be clear, whether Newsmax, knowingly and recklessly disregarded the truth as to Smartmatic and the Election is a question for the jury—*i.e.*, actual malice. However, as required under Florida law, Smartmatic has not demonstrated that there exists a genuine issue as to a material fact on whether Newsmax acted with express malice—*i.e.*, Newsmax's primary motive for the statements was to intentionally to injure Smartmatic, or otherwise constituted a plan or course of conduct motivated by spite, ill-will, or other bad motive. Accordingly, the Court denies the Smartmatic Motion on malice and grants the Newsmax Motion on express malice.

## C. ELEMENTS OF DEFAMATION

To state a claim for defamation under Florida law, a plaintiff must establish: "(1) publication;[232] (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on the matter concerning a public [figure] ...; (4) actual damages; and (5) statement must be defamatory."[233] A statement is defamatory in Florida if it is false and "exposes a person to

---

[231] Smartmatic Opp. at 115.
[232] There is no genuine dispute that the alleged defamatory statements were published by Newsmax to a third-party.
[233] *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts § 558 (1977)).

distrust, hatred, contempt, ridicule, or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment."[234]

The Florida Supreme Court made it clear that a plaintiff suing a media defendant must plead malice and damages.[235] Florida law adopted the United States Supreme Court's ruling in *Gertz*, "which eliminates presumed damages for defamation *per se* actions against media defendants."[236] The Court notes that defamation *per se* does still exist in Florida in cases that do not involve the media.[237]

Smartmatic motions this Court to allow presumed damages as a matter of Delaware public policy because eliminating presumed "damages here would be contrary to longstanding Delaware public policy expressed in its Bill of Rights.[238] The Court declines to do so. In *Gertz*, the Court held so long as the States do not impose liability without fault, "the States may define for themselves the appropriate standard of liability for a publisher or broadcaster" for defaming a "private individual."[239] The *Gertz* Court reasoned "this approach provided a more equitable boundary between the competing concerns" of media organizations and private individuals.[240]

---

[234] *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800 (Fla. Dist. Ct. App. 1997); "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977).

[235] *Mid-Florida Television Corp. v. Boyles*, 467 So. 2d 282 (Fla. 1985). *See also Blake v. Giustibelli*, 182 So. 3d 881, 884-85 (Fla. Dist. Ct. App. 2016) ("Thus after *Gertz*, in libel cases involving media defendants, fault and proof of damages must always be established."); *Edelstein v. WFTV, Inc.,* 798 So.2d 797, 797-98 (Fla. Dist. Ct. App. 2001) ("The court's decision in Boyles makes clear that since Gertz a plaintiff suing a media defendant must nevertheless plead and prove actual injury.").

[236] *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021).

[237] *See Blake*, 182 So. 3d at 885; *Lawnwood Med. Ctr. Inc. v. Sadow*, 43 So. 3d 710, 727-29 (Fla. Dist. Ct. App. 2010).

[238] Smartmatic Opp. at 61.

[239] *Gertz*, 418 U.S. at 348.

[240] *Id.*

The Court has held that Florida law applies. Therefore, the Court will apply Florida law on presumed damages, as well. The Court holds that, under Florida law, Smartmatic must plead and prove actual malice and damages when suing Newsmax, a media organization.[241]

### 1. Of and Concerning

Under Florida law and federal law, a cause of action for defamation cannot be maintained unless it is shown that the alleged defamatory statements are "of and concerning" the plaintiff.[242] Put differently, the statements must be specifically directed at the plaintiff to be actionable.[243]

The allegedly defamatory publications should not be interpreted by extremes, "but should be construed as the common mind would normally understand it."[244] The Court will consider whether an average person upon reading the allegedly defamatory publications statements could reasonably have concluded that Smartmatic was implicated.[245] Although the "of and concerning" requirement is generally a question of fact for the jury, it can also be decided as a matter of law where the statements "are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff"[246]

Smartmatic argues that there is no material dispute that the At-Issue Statements were "of and concerning" Smartmatic because the statements refer to Smartmatic or SGO by name.[247]

---

[241] *Mid-Florida Television Corp*, 467 So. 2d at 283 (stating "at common law, before *Gertz*, we said '[w]ords amounting to a libel per se necessarily import damage and malice in legal contemplation, so these elements need not be pleaded or proved, as they are conclusively presumed as a matter of law.' This statement is no longer accurate regarding a libel action against the media").

[242] *Thomas v. Jacksonville Television, Inc*., 699 So. 2d 800 (Fla. Dist. Ct. App. 1997) (citing *Rosenblatt v. Baer,* 383 U.S. 75, 86 (1966)).

[243] *Rosenblatt v. Baer,* 383 U.S. 75, 86 (1966)).

[244] *Walsh v. Miami Herald Publishing Co*., 80 So.2d 669, 671 (Fla.1955).

[245] *See Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376 (Fla. Dist. Ct. App. 1982), *approved*, 458 So. 2d 239 (Fla. 1984).

[246] *Thomas,* 699 So. 2d at 805 (internal citations omitted).

[247] Smartmatic MSJ at 50.

And the At-Issue Statements refer either to Smartmatic systems, technology, software, or voting machines.[248]

Newsmax contends that many of the allegedly defamatory statements are the exact types of class-wide allegations the Florida courts routinely dismiss.[249] Newsmax further contends that Smartmatic claims it was defamed from statements that did not mention Smartmatic, but rather referenced "another electronic voting machine company: Dominion."[250]

The At-Issue Statements here are of and concerning Smartmatic. Every At-Issue Statements refers to Smartmatic, and a common mind would understand the statement or the segment as whole to be "of and concerning" Smartmatic. The Amended Complaint, on the other hand, includes statements that do not reference to Smartmatic directly. During an interview with Ms. Powell, Mr. Huckabee stated:

> The media keeps saying "there's no evidence, there's no evidence." You and others have shown hundreds of affidavits, sworn statements, under penalty of perjury, that means a person could go to prison for lying about it, of people who say they saw funny business going on. How come we can't seem to get the media and even the general public interested in the evidence you have amassed and distributed?[251]

However, a common mind would find this statement is "of and concerning" Smartmatic even though it is does not mention Smartmatic specifically by name because the Election coverage in whole made it clear that Smartmatic was being accused of "rigging" the Election.

Therefore, the Smartmatic Motion on the "of and concerning" factor is granted, and the Newsmax Motion on the same is denied.

---

[248] *Id.*
[249] Newsmax MSJ at 58.
[250] *Id*. at 60.
[251] Am. Compl. ¶ 161.

## 2. *Falsity*

The First Amendment and Florida law require a public figure plaintiff to prove falsity.[252] "A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."[253] Under the substantial truth doctrine, "a statement does not have to be perfectly accurate if the 'gist' or the 'string' of the statement is true."[254] In considering falsity, the Court "overlooks minor inaccuracies and concentrates upon substantial truth."[255] However, "if the statement is capable of more than one meaning,. . .the trier of fact should determine whether the language used was actually understood in its defamatory sense."[256]

"It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole."[257] To determine whether an allegedly defamatory statement is actionable, the court examines the statement in its totality and the context in which was published.[258] All the words used must be considered, "not merely a particular phrase or sentence."[259] Additionally, "the court must give weight to cautionary terms used by the person publishing the statement."[260] The court must also "consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published."[261]

---

[252] *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702 (Fla. Dist. Ct. App. 1999) (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986)).
[253] *Smith*, 731 So. 2d at 706.
[254] *Parekh v. CBS Corp.*, 820 Fed. Appx. 827 (11th Cir. 2020) (citing *Smith*, 731 So. 2d at 731).
[255] *Smith*, 731 So. 2d at 707 (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)).
[256] *Smith*, 731 So. 2d at 707 (citing *Wolfson v. Kirk*, 273 So. 2d 774 (Fla. Dist. Ct. App. 1973)).
[257] *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)
[258] *Fortson*, 434 F. Supp. 2d at 1379 (citing *From v. Tallahassee Democrat, Inc.,* 400 So. 2d 52 (Fla. Dist. Ct. App. 1981)).
[259] *Id.*
[260] *Id.*
[261] *Id.*

Newsmax argues that the statements regarding "Smartmatic's connections to Venezuela, and the role of Smartmatic technology in elections in Venezuela, the Philippines, and the United States are substantially true."[262] Newsmax also contends that the statements concerning Mr. Neffenger and the statements claiming that Smartmatic's software was used by Dominion are substantially true.[263] Newsmax does not dispute that some of the statements made by Trump Affiliates proved to be false, but Newsmax asserts that its own reporting of those "allegations as the story developed was not substantially and materially false."[264]

Smartmatic asserts that the statements falsely "stated or implied that Smartmatic participated in rigging the 2020 election or Smartmatic's software was used to rig the 2020 election."[265] Smartmatic states it is "crystal clear" that it did not participate in rigging the 2020 election for the following reasons: (i) Smartmatic only provided its service in Los Angeles County for the 2020 election; (ii) Smartmatic's machines allowed voters to select the candidate of their choice and generated a paper record of the vote; (iii) the machines did not switch, alter, or change any votes; (iv) the post-election audits verified the 2020 results; and (v) Newsmax acknowledged it has no evidence of Smartmatic or its software altering the 2020 election.[266] Smartmatic has provided no evidence showing the statements regarding Neffenger and ties to Venezuela are false.

Here, under the under the substantial truth doctrine, the Court cannot find that every allegedly defamatory statement is materially false. At-Issue Statement #3 includes John Bachman stating:

---

[262] Newsmax MSJ at 62.
[263] *Id.* at 64.
[264] *Id.* at 65.
[265] Smartmatic MSJ at 53.
[266] *Id.* at 54-7.

42

Well, you heard the concerns about Dominion. There's also some voting software called Smart Tech that has caught the attention of a lot of Trump supporters and for good reason. *Retired Admiral Peter Neffenger is the chairman of Smartmatic. He's also part of Joe Biden's transition team*. Michael Flynn's attorney, former federal prosecutor Sidney Powell, says it's not a coincidence. But we do need to get to the bottom of all these allegations regarding Dominion and Semantic or Smart Tech I should say.[267]

Mr. Bachman's statement there is substantially true. Mr. Neffenger admitted under oath, during his deposition that he was a part of President Biden's team that he is currently the chairman of the board for Smartmatic. Similarly, in At-Issue Statement #4, Robinson stated, in part: "They've added an executive from that software company to their transition team, his name is Peter Neffenger. And until recently, he was listed as the chief board member of Smartmatic."[268]

At-Issue Statement #4 also includes Mr. Kraisman's statement that:

This name here we're going to give you is Peter Neffenger. He is a former Chief of the Transportation Security Administration and now sits on the board of the company called Smartmatic, which is responsible for the software used to count hundreds of thousands, if not millions of votes, in this specific election

Ms. Robinson's and Mr. Kraisman's statement here are substantially true. As stated, Mr. Neffenger confirmed his connection to President Biden and role on the Smartmatic board. It is also substantially true that Smartmatic was responsible to "count hundreds of thousands, if not millions of votes;" Smartmatic offered its services to Los Angeles County, one of the largest precincts in the Country, so while there may be minor inaccuracies in Kraisman's statement, the "gist" of the statement is substantially true. At the very least, the Court would find there is a triable issue on whether the statement is substantially true.

---

[267] *Id*. at 14.
[268] *Id*. at 16.

Again, At-Issue Statement #2 includes Greg Kelly stating: "Peter Neffenger, his name has emerged, he worked for the, I'm sorry, Semantic systems, I believe, and he has a role in the Biden transition team. Anything you can tell us about how are Smartmatic rather Smartmatic – how big a deal is this?" This is not only substantially true, but it is completely true. Mr. Neffenger is a Smartmatic board member.[269] Moreover, President Biden appoint Mr. Neffenger to President Biden's transition team.[270]

Next, the statement alleging Smartmatic has connections to Venezuela are also substantially true. In an exchange between Mr. Kraisman and Ms. Robinson, Ms. Robinson stated:

> Now, as you said, and Sidney Powell's been talking specifically a lot about Dominion voting machines and Smartmatic. She suggests that any American official who allowed these into their states should be investigated for possible conflicts of interest or kickbacks. Now, clearly, that's not how the Biden camp feels, however, because they have added an executive or former executive to Smartmatic. That's the *software Powell are talking a lot about that was used in Venezuela's, were heavily implicated and had Venezuela's dirty elections. They've added an executive from that software company to their transition team, his name is Peter Neffenger.* And until recently, he was listed as the chief board member of Smartmatic.[271]

Smartmatic fails to explain how the statements concerning its history in Venezuela is materially false nor has Smartmatic proven it is false. Venezuelan government financing agencies invested over $200,000 into a smaller company owned by some of the same owners as Smartmatic. Scholarly studies conducted by Harvard University and Massachusetts Institute of Technology found the Venezuelan election was compromised. Moreover, when CFIUS was to investigate Smartmatic and its ties to the Venezuelan government, Smartmatic sold its U.S. subsidiary to Dominion. For these reasons, the At-Issue Statements that discuss Smartmatic's

---

[269] Neffenger Dep.
[270] *Id*. at 27:6-16.
[271] Am. Compl. ¶ 110.

ties to Venezuela do not satisfy the falsity factor for defamation. The statements regarding Smartmatic and its ties to Venezuelan are substantially true or present a triable issue of fact; and there has been reporting on the same in the United States as early as 2006 when Congresswoman Carolyn Maloney first raised concerns.

The Court needs to be clear that this does not mean that allegations regarding Smartmatic and the Election are disputed. The factual record is clear. Smartmatic did not provide any election machines or software in connection with the Election outside of Los Angeles. In addition, the factual record is clear that no one ever alleged that votes in Los Angeles were altered or manipulated or otherwise questionable. Accordingly, statements regarding Smartmatic software or voting machines altering the results of the Election are factually false. The reports and investigations conducted by multiple state and federal agencies since the Election universally come to the same result. Newsmax has not created any genuine issue as to a material fact on the issue of falsity/truth on Smartmatic's involvement in the Election.

Therefore, the Court will allow Newsmax to contest falsity as to Smartmatic's connections with Venezuela. However, the Court will instruct the jury that any allegations regarding whether the Election and its results were somehow altered or manipulated by Smartmatic are factually false/untrue.

### 3. *Actual Damages*

To recover for defamation, the plaintiff "must show that the damages were proximately caused by the defamatory statements."[272] Actual damages "must be proven by specific evidence as to the time, cause, and amount."[273] Under Florida law, as discussed above, presumed damages

---

[272] *Cape Publications, Inc. v. Reakes*, 840 So. 2d 277 (Fla. Dist. Ct. App. 2003).
[273] *Flynn v. Cable News Network, Inc.*, 2023 WL 5985193 at *5 (M.D. Fla. Feb. 22, 2023).

for defamation *per se* actions against media defendants is unavailable, therefore, the plaintiff must plead and prove actual damages.[274]

Newsmax states Smartmatic has failed to provide a link between Newsmax's reporting and Smartmatic's damages.[275]  Specifically, Newsmax contends that: (i) Smartmatic's damage expert reports "make no sufficient attempt to show that Smartmatic's harms result from Newsmax's conduct" rather than the 2020 Election reporting by third-party news organization;[276] (ii) Smartmatic has no evidence "that any of its customers—government contracting officials— viewed Newsmax's election coverage, let alone that its reporting impacted those customers' decision making";[277] and (iii) Smartmatic's customers (government entities) are required to make decisions based on objective requirements found in their government, not based on public perception.[278]

Smartmatic asserts it has "developed significant expert and fact-based evidence to demonstrate harm."[279]  Particularly, Smartmatic states it will offer expert reports demonstrating the statements: (i) were disseminated to a unique audience, and contributed to a negative public perception of Smartmatic; (ii) harmed Smartmatic's "brand and reputation as a provider that facilities secure and accurate elections;" and (iii) hindered Smartmatic's business and it lost "hundreds of millions in business and incur[red] expenses to restore its reputation."[280]

Damages is a question for the jury.  Newsmax questions the amount of damages and the accuracy of how those damages are calculated.  Newsmax argues the experts' reports are flawed and unsupported by the record; however, the credibility of qualified experts and their findings is

---

[274] *See, e.g., Corsi,* 519 F. Supp. 3d at 1119 (citing *Mid-Florida Television Corp.*, 467 So. 2d at 282).
[275] Newsmax MSJ at 83.
[276] *Id*. at 88.
[277] *Id*. at 93.
[278] *Id*. at 97.
[279] Smartmatic Opp. at 63.
[280] *Id.*

a question for the jury.  The Special Master issued an Order denying the parties' *Daubert*

Motions, stating, it is a "jury function" to determine the credibility of experts.[281]  Moreover, the

Court has denied any exceptions to the decisions by the Special Master on the damages experts

of the parties.

### D. PRIVILEGE

"Defamation is an area of state law, and the various defamation privileges are an integral

part of the law of defamation."[282]  Whether a defendant is protected by privilege is a question of

law for the court to determine.[283]  To be clear, in Florida, the media "has no qualified privilege to

defame a private individual simply by virtue of the matter being of public concern."[284]  However,

the media does have "qualified privilege to report on matters brought out in public proceedings"

even if it involves private individuals.[285]

Whether privilege applies is generally a question of law.[286]  However, the Florida

Supreme Court stated:

> In determining whether or not a communication is privilege, the nature of the
> subject, the right, duty, or interest of the parties in such subject, the time, place, and
> circumstances of the occasion, and the manner, character, and extent of the
> communication, should all be considered. When all these facts and circumstances
> are conceded, a court may decide whether a communication is a privileged one, so
> as to require the plaintiff to prove express malic[e]. But, *when all the essential facts
> and circumstances are not conceded, the existence or nonexistence of the privilege
> should be determined by the jury from all the facts and circumstances of the case. .
> . .*[287]

---

[281] D.I. 1114.
[282] *Rendon v. Bloomberg, L.P.,* 403 F. Supp. 3d 1269 (S.D. Fla. 2019) (quoting *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704 (7th Cir. 1994)).
[283] *Corsi,* 519 F. Supp. 3d at 1119 (internal citations omitted).
[284] *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So. 2d 972, 975 (Fla. Dist. Ct. App. 1987).
[285] *Id.*
[286] *Huszar v. Gross*, 468 So.2d 512, 516 (Fla. 1st DCA 1985).
[287] *Hartley & Parker v. Copeland*, 51 So. 2d 789 (Fla. 1951); *see also Coogler v. Rhodes*, 38 Fla. 240, 21 So. 109 (1897) (stating the admissible evidence "under the plea of privileged communication", is "to be considered by the jury as to whether the alleged libelous language was published through the express malice of the defendant.").

Thus, the Court decides whether the privilege is legally available to Newsmax; however, the jury will make the factual determination whether Newsmax's reporting falls within that privilege because all the facts and circumstances are not "conceded."

Here, there is no dispute that the reporting on the 2020 Election was a matter of general or public concern.[288]  However, Smartmatic believes it is a private individual, thus "absolute privilege" is not available for Newsmax.[289]  To support its position, Smartmatic argues that *Miami Herald Publishing Co.* "forecloses adopting an absolute privilege shielding Newsmax from liability" for its statements.[290]

In *Miami Herald Publishing Co.*, a newspaper falsely reported the plaintiff, a private person, was the owner of a beer truck found carrying three tons of marijuana.[291]  There, the Florida Supreme Court declined to extend qualified privilege for a newspaper to defame a private person merely because the defamatory communication is directed to a matter of public concern.[292]  Instead, the court held that because the plaintiff is a private person, the plaintiff needs to show the media defendant was negligent with its reporting.[293]

The *Miami Herald Publishing Co.* negligence standard is inapplicable here.  Smartmatic is a limited purpose public figure, Newsmax is a media defendant, and there is no express malice.  Accordingly, privilege is available.

### 1.  *Neutral Reporting Privilege*

"Under Florida law, it is well settled that disinterested communications of matters of public concern are privileged, even if defamatory."[294]  This privilege, known as the "neutral

---

[288] Smartmatic Opp. 8 (Smartmatic concedes that the 2020 election was a matter of "public or general concern.").
[289] *Id*. at 9.
[290] *Id*. at 8.
[291] *Miami Herald Pub. Co*, 423 So. 2d at 241.
[292] *Id*.
[293] *Id*.
[294] *Rendon,* 403 F. Supp. 3d at 1276.

reporting privilege," is only extended to disinterested and neutral reporting by media defendants.[295] A "news story" is protected by the neutral reporting privilege when the statement is a "disinterested report" of a newsworthy event.[296]

The reporting could be privileged even if the source is unreliable.[297] In *Smith*, the plaintiff alleged that defendants published defamatory statements in a newspaper article.[298] But because the article recounted a third-party's statements and reported that plaintiff had been contacted and refused to comment, the court found that the story was protected by the neutral reporting privilege. This was true even though the plaintiff was not a public figure, and the source was not a "prominent" or "reliable" source.[299]

Newsmax contends the neutral reporting privilege applies here because many of the statements Smartmatic challenges were "statements by third parties made on non-Newsmax platforms and re-broadcast by Newsmax, or by third parties appearing as guests on Newsmax's programs."[300] Newsmax further states when it broadcasted these third-party statements, Newsmax identified the speaker and provided information on the speaker's title and their role in the unfolding events.[301] Newsmax contends that Newsmax's hosts and reporters "endeavored to make it clear that they were discussing or analyzing allegations by prominent public figures with personal knowledge of the unfolding controversy."[302]

Smartmatic argues the facts from previous cases that applied neutral reporting privilege are not analogous to this case because Smartmatic is a private figure. Instead, Smartmatic cites

---

[295] *Ortega Trujillo v. Banco Cent. Del Ecuador,* 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998).
[296] *Smith v. Taylor Cnty. Pub. Co.*, 443 So. 2d 1042 (Fla. Dist. Ct. App. 1983).
[297] *Rendon,* 403 F. Supp. 3d at 1277.
[298] 443 So. 2d 1042.
[299] *Id*.
[300] Newsmax MSJ at 42.
[301] *Id*. at 43.
[302] *Id*. at 44.

49

to *Miami Herald Publishing Co.* and argues "the Florida Supreme Court declined to recognize a neutral reporting privilege."[303]  Next, Smartmatic argues that even if the Court were to find the privilege applied, Smartmatic has shown express malice; therefore, the privilege is negated.[304]  The Court has already found that Smartmatic is a limited purpose public figure and not a private figure.  In addition, the Court has found that no genuine issue of material fact exists on the issue of express malice.

In this case, because all the facts and circumstances are not conceded, the jury should decide whether neutral reporting privilege applies.  With these facts, a reasonable jury could find Newsmax was reporting on a matter of public concern without endorsing the allegations surrounding the Election.  However, a reasonable jury could also find that Newsmax provided its viewers with a report of the newsworthy event but that the report was not a disinterested report of the newsworthy event.

Here is an example.  At-Issue Statement #2 states:

**Greg Kelly**: And the evidence is slowly emerging. Yes, I would have liked to have seen it yesterday. But the President has some very, very smart lawyers. One of my favorites, Sidney Powell, she helped Michael Flynn beat the travesty of a case that was lodged against him.

**Sidney Powell (clip)**: President Trump won by not just hundreds of thousands of votes but by millions of votes that were shifted by this software that was designed expressly for that purpose. We have sworn witness testimony of why the software was designed. It was designed to rig elections. He was fully briefed on it. And he saw it happen in other countries. It was exported internationally for profit by the people that are behind Smartmatic and Dominion. They did this on purpose. It was calculated. They've done it before we have evidence from 2016 in California. We have so much evidence I feel like it's coming in through a firehose.

**Greg Kelly**: *I believe her and I don't believe the critics and the naysayers. Why? Because quite frankly, they don't deserve credibility anymore.*[305]

---

[303] Smartmatic MSJ at 126.
[304] *Id*. at 127.
[305] Smartmatic MSJ at 12-3 (emphasis added).

At-Issue Statement #2 plays a clip of Ms. Powell's stating her views, which seems to be subject to the neutral reporting privilege. However, after Ms. Powell's clip, Mr. Kelly's statement could be construed as an endorsement of Ms. Powell's clip. Mr. Kelly told his audience he believes Powell's allegations and he offered his opinion that "the critics and the naysayers . . . don't deserve credibility anymore." A jury could easily find that such a statement is not neutral or disinterested.

Here is another example. At-Issue Statement #5 states:

**Sidney Powell (clip)**: Well, let me [say] this way. First of all, I never say anything I can't prove. Secondly, the evidence is coming in so fast, I can't even process it all. Millions of Americans have written I would say by now, definitely hundreds of thousands have stepped forward with their different experiences of voter fraud. But this is a massive election fraud. And I'm very concerned it involved not only Dominion and that Smartmatic software, but that the software essentially was used by other election machines also. It's the software that was the problem. Even their own manual explains how votes can be wiped away.

**Chris Salcedo**: Now. Yep. They, they issue voting software with a directive and here's how you change the results. *Why would you issue a voting machine that says, here's, here's a step-by-step process and how you can change the results.*

**Chris Salcedo**: *But what Sidney Powell is suggesting is that those who did, there's only one reason why you buy Dominion software. There's only one reason why you buy that is so you can cheat. And any officer who bought this should be under investigation, according to Sidney Powell.* Because there's only one reason why you buy election software with instructions on how to change the vote.[306]

At-Issue Statement #5 plays a pre-recorded statement by Ms. Powell, and then Mr. Salcedo questions Ms. Powell's allegations and identifies the allegations as Ms. Powell's words. However, the facts and circumstances surrounding At-Issue Statement #5 are not conceded. The jury should decide whether Mr. Salcedo's reporting after Ms. Powell's pre-recorded statement was disinterested reporting about matters of public concern or if he adopted Ms. Powell's statement as his own and was no longer neutral.

---

[306] *Id*. at 18-9 (emphasis added).

## 2. *Fair Report Privilege*

In Florida, the news media also has a "qualified privilege to make reports of judicial and quasi-judicial proceedings as long as they are accurate, fair and impartial."[307] Although the first uses of the fair report privilege were "related to official proceedings—like court proceedings— the privilege has since been expanded to cover a wide range of government-derived sources," including public records and statements from government officials.[308] Neutrally hosting and moderating a fiery debate is privileged.[309]

The plaintiff can challenge the fair report privilege where the reporting is not "reasonably accurate and fair" in describing the contents of the government records and statements.[310] In other words, the publication or broadcast must be a "substantially correct account of the information contained in public records or from a government source."[311]

Smartmatic argues that the relevant statements are not protected because Ms. Robinson was not reporting on an official document and her account of the document was not reasonably fair and accurate.[312] Specifically, Smartmatic asserts that (i) a document released on the internet is not an official document; (ii) calling the document a "sworn affidavit" was not an accurate and fair account of the document because the "sworn affidavit" was not signed or sworn; and (iii) Ms. Robinson did not mention the document was filed with a lawsuit.[313]

---

[307] *Huszar,* 468 So.2d at 516.
[308] *Larreal v. Telemundo of Fla., LLC*, 489 F. Supp. 3d 1309 (S.D. Fla. 2020) (citing *Folta v. New York Times Co.,* 2019 WL 1486776 (N.D. Fla. Feb. 27, 2019); *Woodard v. Sunbeam Television Corp*., 616 So. 2d 501 (Fla. Dist. Ct. App. 1993) (holding privilege applies to information the reporter received from Attorney General's Office and contained in a report from the Florida Department of Law Enforcement).
[309] *Corsi,* 519 F. Supp. 3d at 1125.
[310] *Larreal*, 489 F. Supp. 3d at 1319.
[311] *Id.*
[312] Smartmatic Opp. at 36.
[313] *Id.*

Newsmax argues that the privilege applies to information received from government officials, and it extends to the publication on the contents of the public record.[314] And "what matters is that Ms. Robinson reported on the contents of a federal-lawsuit affidavit, not who she received it from."[315]

Here, the fair report privilege is available to Ms. Robinson's reporting on the affidavit as it was submitted with the lawsuits initiated by Trump Affiliates claiming the Election was compromised. However, a jury will decide whether Ms. Robinson's reporting falls within the fair report privilege and whether she provided her audience with reasonably "accurate and fair" contents of a government record. At-Issue Statements numbers 6, 7, 8, and 9 include Ms. Robinson reporting on the affidavit, which state:

> Well, this stopping of counting on election night, particularly in five different states, is exactly what prompted a whistleblower to come forward and provide a *sworn affidavit* to Trump lawyer Sidney Powell, which she released on the Internet yesterday. In that affidavit, the high-ranking military official says that – or provides a detailed firsthand – details of his firsthand experience of manipulating vote software called Smartmatic in the 2013 presidential election. He was there watching it in Venezuela. In it he says that this Smartmatic software serves as the basis or the DNA for all software used in every voting machine. In it he says that as he watched the 2020 presidential election night coverage it, quote, "The circumstances and events are eerily reminiscent of what happened with Smartmatic software electronically changing votes in the 2013 presidential election in Venezuela."[316]

> Well, a high-ranking military official has provided a *sworn affidavit* detailing his firsthand experience with vote-switching software in Venezuela, particularly in the 2013 presidential election in that country. This person says that the Dominion voting machines uses a similar software that, quote, "has the same DNA." This person is saying that they're coming forward because of what they saw in the 2020 presidential election here in this country saying, quote, "The circumstances and events are eerily reminiscent of what happened with Smartmatic software electronically changing votes in the 2013 presidential election in Venezuela."[317]

---

[314] Newsmax Reply at 17.
[315] *Id.*
[316] Smartmatic MSJ at 20.
[317] *Id*. at 21.

Yes, Powell says that this is a high ranking military official who has come forward as a whistleblower detailing his firsthand experience watching votes be changed during a Presidential election in Venezuela, specifically in 2013. This whistleblower says that the software that was used was [] Smartmatic. And it was designed specifically for Hugo Chavez and his successor in order to manipulate votes without detection. But Smartmatic according to this whistleblower[,] software that is essentially the ancestor for the software used by Dominion voting machines and every other vote tabulating machine. The whistleblower saying that Smartmatic software is the DNA of every vote [] tabulating company software. In his affidavit, he says quote, the fact that the voting [] machine displays a voting result that the voter intends and prints out a paper ballot, which reflects that change does not matter. It is the software that counts the digitized vote and reports the results. The software itself is the one that changes the information electronically to [] the operator of the software and vote-counting system intends to produce that counts. This whistleblower [] says he is coming forward because he's concerned about what he has seen during the 2020 presidential election, saying, quote, the circumstances and events are eerily reminiscent of what happened with Smartmatic software electronically changing votes in the 2013 presidential election in Venezuela.[318]

In *Lavin v. New York News, Inc.,* a newspaper reported on an affidavit filed in a federal lawsuit by the FBI.[319]  The affidavit discussed allegedly improper relationships between certain policemen and persons associated with organized crime.[320]  Although there were some discrepancies between what appeared in the affidavit and what was reported, the court held that the report was fair and accurate because it conveyed a substantially correct account of the official document.[321]

A "qualified privilege of reporting on official proceedings is the settled law of Florida."[322]  This privilege "exists so that the public may be kept informed of the workings of government."[323]  "That purpose is served, notwithstanding any inaccuracy of the information, when the information brought out in official proceedings is reported."[324]  Although "the press has

---

[318] *Id.* at 22.
[319] 757 F.2d 1416 (3d Cir.1985).
[320] *Id.*
[321] *Id.*
[322] *Ortega v. Post-Newsweek Stations, Fla., Inc*., 510 So.2d 972, 976 (Fla. Dist. Ct. App. 1987).
[323] *Id.*
[324] *Id.* at 977.

no duty to go behind statements made at official proceedings and determine their accuracy before releasing them," Ms. Robinson could have easily verified the affidavit was sworn.[325] Therefore, the Court cannot determine as a matter of law that Ms. Robinson's reporting was a fair and accurate report with minor discrepancies. Ms. Robinson reported the affidavits were sworn when they were not. A reasonable jury could find Ms. Robinson's misstatement was material so the fair report privilege may not apply. Conversely, a reasonable jury could find that because the contents were read accurately, the fact that the affidavit is sworn or unsworn is immaterial.

## E. FLORIDA NOTICE STATUTE

Florida's retraction statute states:

Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.[326]

Newsmax argues Smartmatic failed to provide Newsmax with a pre-suit notice as required by Florida law specifying the additional statements added to the Amended Complaint, so Newsmax is entitled to summary judgment on those statements.[327] Newsmax also argues that not only did Smartmatic fail to give notice, but Smartmatic also failed to request that Newsmax retract the statements.[328]

Smartmatic argues that Newsmax is not entitled to summary judgment based on the retraction statute because: (i) "Newsmax waived the pre-suit notice defense by failing to raise it as an affirmative defense" in its answer to the Amended Complaint; (ii) Newsmax also failed to raise the issue in its motion to dismiss; (iii) Smartmatic provided Newsmax with notice of the

---

[325] *Id.* at 976.
[326] Fla. Stat. Ann. § 770.01.
[327] Newsmax MSJ at 126.
[328] *Id.*

statements that Smartmatic intended to add to its Amended Complaint before filing its Amended Complaint; (iv) the additional statements are of the same nature as the statements that Smartmatic provided notice for; and (v) serving Newsmax an additional notice would be futile.[329]

Here, Newsmax's defense under the Florida retraction statute is deemed waived. In *Ingersoll v. Hoffman,*[330] the Supreme Court of Florida held that the "defendant's failure to timely and specifically raise statutory pre-suit notice conditions until after applicable statute of limitation had run constituted a waiver of the issue."[331] It was Newsmax's duty to the raise the defense in either its Answer to the Amended Complaint or its Motion to Dismiss the Amended Complaint. Newsmax did not. Now, after the statute of limitations has run, Newsmax is motioning the Court to grant summary judgment on the additional statements in the Amended Complaint. This defense was not raised timely; therefore, the defense is inapplicable to this action.

## F. FLORIDA SLAPP

Florida's anti-SLAPP statute prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]"[332] It provides that "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section."[333]

---

[329] Smartmatic Opp. 123-25.
[330] 589 So.2d 223 (Fla.1991).
[331] *Acosta v. HealthSpring of Fla., Inc.*, 118 So. 3d 246 (Fla. Dist. Ct. App. 2013).
[332] Fla. Stat. Ann. § 768.295.
[333] *Id.*

Newsmax argues Smartmatic's claims are based on Newsmax's exercise of its common law and constitutional rights, and Smartmatic's suit is meritless.[334]  Smartmatic opposes.[335]  A meritless claim would not survive a defendant's motion for summary judgment.[336]  Therefore, the Florida SLAPP statute is inapplicable here.

## VI.    CONCLUSION

For the reasons stated above, the Smartmatic Motion is **GRANTED** on the issues of: (i) whether the statements were published; "of and concerning" Smartmatic; and (iii) falsity with respect to Smartmatic and the Election. Otherwise, the Smartmatic Motion is **DENIED**.

The Newsmax Motion is **GRANTED** on express malice only.  Otherwise, the Newsmax Motion is **DENIED**.

**IT IS SO ORDERED**

September 12, 2024
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:      File&ServeXpress

---

[334] Newsmax MSJ at 128.
[335] Smartmatic Opp. at 126.
[336] *See Gov't Employees Ins. Co. v. Right Spinal Clinic, Inc*., 2022 WL 2466039, at *11-2 (M.D. Fla. July 6, 2022).